Kenneth S. Kasdan, State Bar No. 71427
kkasdan@kasdancdlaw.com
**KASDAN LIPPSMITH WEBER TURNER LLP**
19900 MacArthur Boulevard, Suite 850
Irvine, California 92612
Tel: (949) 851-9000
Fax: (949) 833-9455

Graham B. LippSmith, State Bar No. 221984
glippsmith@klwtlaw.com
Jaclyn L. Anderson, SBN 258609
janderson@klwtlaw.com
Frank A. Perez, State Bar No. 305832
fperez@klwtlaw.com
**KASDAN LIPPSMITH WEBER TURNER LLP**
500 S. Grand Ave., Suite 1310
Los Angeles, CA 90071
Tel: (213) 254-4800
Fax: (213) 254-4801

Attorneys for Plaintiff, the Class and the Subclass

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA PARK-KIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAIKIN INDUSTRIES, LTD., DAIKIN APPLIED AMERICAS INC., F/K/A MCQUAY INTERNATIONAL, DAIKIN NORTH AMERICA LLC, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.2:15-cv-09523-CAS-KK<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing Date:  February 22, 2016<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 5<br>Judge: Hon. Christina Snyder |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   APPLICABLE LAW ........................................................................... 1

III.  THE FAC GIVES SUFFICIENT NOTICE OF THE CLAIMS ......................... 3

   A.  The FAC Provides Ample Information About the Plaintiff, the Defective Products, Theories of Liability and Remedies Sought ......................... 3

   B.  Plaintiff's Claims Are Not Barred by the Economic Loss Rule ............... 5

   C.  The FAC Adequately Pleads Strict Liability-Failure to Warn .................. 8

   D.  The FAC Adequately Pleads Manufacturing and Design Defects ............. 8

   E.  The FAC Adequately Pleads Negligence ......................................... 10

   F.  The FAC Adequately Pleads Claims for Breach of Warranty ................. 11

   G.  The FAC Adequately Pleads California UCL Violations ....................... 14

      1.  Plaintiff has standing ....................................................... 14

      2.  Plaintiff's fraud UCL claims .............................................. 15

      3.  Plaintiff's "unlawful" prong claim ...................................... 15

      4.  Plaintiff's "unfair" prong claim ......................................... 16

   H.  The FAC Adequately Pleads Right to Repair Act Violations .................. 17

      1.  Plaintiff alleged standards violations and damage to other products. ........ 17

      2.  RORA does not require Plaintiffs to give pre-litigation notice ................ 19

      3.  At a minimum, the FAC alleges violations of Cal. Civ. Code § 897. .......... 21

IV.  IF THE COURT IS INCLINED TO DISMISS ANY CAUSE OF ACTION, THE COURT SHOULD INSTEAD GRANT LEAVE TO AMEND ................. 22

V.   CONCLUSION ............................................................................... 23

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 2, 3

*Blevin v. Coastal Surgical Institute*, 2015 Cal. App. LEXIS 18 (Jan. 12, 2015) .......................... 9

*Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230 (2011) ...................... 16

*Cartwright v. Viking Industries, Inc.* 249 F.R.D. 351 (E.D. Cal. 2008) ................ 13

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999) .......... 16

*Clapper v. Amnesty Int'l, USA*, 133 S.Ct. 1138 (2013) ...................................... 6

*Collins v. Navistar, Inc.*, 214 Cal. App. 4th 1486 (2013) ...................................... 9

*Eclectic Props. East, LLC v. Marcus & Millchap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) .......... 2

*Erlich v. Menezes*, 21 Cal.4th 543 (1999) ........................................................... 6

*Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978) ............... 13

*Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57 (1963) ......................... 12

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ............................................... 2

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................. 7

*J'Aire Corp. v. Gregory*, 24 Cal.3d 799 (1979) ............................................... 6

*Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) .................................... 2, 22

*Jimenez v. Super. Ct.*, 29 Cal.4th 473 (2002) ................................................... 6

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................................. 15

*Keith v. Buchanan*, 173 Cal. App. 3d 13 (1985) ............................................... 11

*Kingsbury v. U.S. Greenfiber, LLC*, No. cv 08-00151 2009 U.S. Dist. LEXIS 92014 ............... 21

*Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (2011) ........................................... 14

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ...................................... 2, 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................... 14

*McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044 (C.D. Cal. 2014) .................. 12

1

**Cases cont'd.**

2    *Pannu v. Land Rover North America, Inc.*, 191 Cal. App. 4th 1298 (2011). ................................. 9

3    *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) ............................. 5, 6

4    *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006 (N.D. Cal. 2009) ................................................. 8

5    *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001) ................................... 16

6    *Sprewell v. Golden State Warriors*, 266 F.3d 979 (2001) ......................................................... 15

7    *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ....................................................................... 1, 2

8    *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)................................................................ 1, 2

9    *Tobacco Cases*, 46 Cal.4th at 327 ........................................................................................... 15

10   *Twombly* ............................................................................................................................. 2, 3

11   *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (2010) ....................................... 11, 12

12

**Statutes**

13   Cal. Bus. & Prof. Code § 17200 ............................................................................................. 15

14   CAL. CIV. CODE § 1559 ........................................................................................................... 13

15   CAL. CIV. CODE § 896(g)(3)(E) ............................................................................................. 17

16   CAL. CIV. CODE 896(g)(5) ........................................................................................... 17, 18, 19

17   CAL. CIV. CODE § 896 ............................................................................................................ 18

18   CAL. CIV. CODE § 897 ............................................................................................................ 21

19   CAL. CIV. CODE § 910(a) ........................................................................................................ 20

20   CAL. CIV. CODE § 930(b) ........................................................................................................ 20

21   CAL. CIV. CODE § 931 ............................................................................................................ 20

22   CAL. CIV. CODE § 936 ............................................................................................................ 20

23   CAL. CIV. CODE § 1702, et seq................................................................................................ 17

24   Fed. R. Civ. Pro. 1 .................................................................................................................... 1

25   Fed. R. Civ. Pro. Rule 8(a)......................................................................................................... 1

26

27

28

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

## OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

## I.    INTRODUCTION

Defendants Daikin Applied Americas, Inc. and Daikin North America, LLC ("Defendants") bring their instant Motion to Dismiss Plaintiff Joanna Park-Kim's First Amended Complaint ("FAC") in its entirety and with prejudice, arguing that they cannot assess Plaintiff's claims or provide an Answer to them without additional factual allegations. Defendants' demands for additional facts mostly assess pleading requirements beyond those prescribed by Rule 8 of the Federal Rules of Civil Procedure. Plaintiff's allegations are sufficient to state claims for remedies available to her, the Class and the Subclass due to Defendants' defective evaporator coils. Namely, Plaintiff alleges a specific product defect that leads to product failure presently manifested and costly damages. For the reasons more fully set forth herein, Plaintiff respectfully urges the Court to deny Defendants' Motion to Dismiss in its entirety. Plaintiff requests leave to amend the First Amended Complaint in the event the Court finds any deficiencies in Plaintiff's claims.

## II.    APPLICABLE LAW

"The theory of Rule 8(a), and of the federal rules in general, is notice pleading." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Rule 8 is applied in all civil matters, regardless of cause of action or subject matter, with very limited exceptions. *Starr*, 652 F.3d at 122, *citing* Fed. R. Civ. Pro. 1; *Swierkiewicz*, 534 U.S. at 513. "Given the Federal Rules' simplified standard for pleading, 'a court may dismiss a complaint only if it is clear that no relief could be granted under any

set of facts that could be proved consistent with the allegations.'" *Swierkiewicz*, 534 U.S. at 514, *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

 "[A] complaint is required only to give notice of the claim such that the opposing party may defend himself or herself effectively. The theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts." *Id*. at 1212. In discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the *Starr* court noted that pleading allegations need only plausibly suggest that the plaintiff is entitled to relief. *Id*. at 1214. The *Twombly* court noted that plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [liability]." *Twombly*, 550 U.S. at 556.

Dismissal without leave to amend is appropriate only where the Court determines that deficiencies in the complaint cannot possibly be cured by any amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Defendants rely almost exclusively on *Iqbal* and *Twombly* to argue that Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted, claiming that it lacks "'plausible,' 'factual' allegations sufficient 'to raise a right to relief above the speculative level." Defendants' Motion to Dismiss ("Mot.") at p. 6, *citing Twombly*, 550 U.S. at 555-56; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). However, the tension that exists between cases concerning pleading standards on motions to dismiss is well-recognized. *See Starr*, *supra*, 652 F.3d 1202. Contrary to what Defendants' Motion suggests, subsequent authority affirms that *Iqbal* and *Twombly* do not establish or create a heightened pleading requirement beyond traditional and statutory notice pleading requirements. *Eclectic Props. East, LLC v. Marcus & Millchap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

///

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

### III.   THE FAC GIVES SUFFICIENT NOTICE OF THE CLAIMS

#### A.   The FAC Provides Ample Information About the Plaintiff, the Defective Products, Theories of Liability and Remedies Sought

Defendants claim, "[Plaintiff's allegations] do not even satisfy pre-*Twombly* standards because Defendants cannot begin to evaluate the substance of Plaintiff's claims, let alone meaningfully answer them." However, Plaintiff's First Amended Complaint ("FAC") alleges more than ample facts concerning Defendants defective products.  Plaintiff specifically describes "Daikin Coils" as "a component known as an evaporation coil" in HVAC units designed, manufactured, and sold by Defendants Daikin Industries, Daikin Applied, Daikin North America.  FAC at ¶ 2. Plaintiff further alleges that the Daikin Coils in Defendants' HVAC units "are highly susceptible to corrosion under normal operating conditions" and "leak ever-increasing amounts of refrigerant," "reduc[ing] the overall efficacy of the Daikin Coils, leading to costly repairs, and eventually, the total failure of the Daikin Coils." FAC ¶ 4. In addition, Plaintiff alleges that the Daikin Coils fail by their very design because their copper tubing is susceptible to a process called formicary corrosion. FAC ¶ 5.

Defendants claim to be wholly unaware of facts such as how Plaintiff "acquired her HVAC unit" or of whether her evaporator coil is copper or aluminum, and they claim that "Plaintiff does not allege that the product she owned failed, was actually defective, or that she suffered any harm as a result." Mot. at pp.6-7. Yet, Plaintiff specifically alleges that the Daikin Coils that are the subject of her First Amended Complaint are manufactured with copper tubing. FAC ¶ 29. Plaintiff further alleges that she, the Class and the Subclass have been harmed and suffered damages as a result of the claimed product defect. FAC ¶¶ 31, 54. Plaintiff explicitly alleges that "she is a Class and Subclass Member, has claims that are typical of the Class and Subclass, and there is no reason why she cannot adequately represent the Class and Subclass." FAC ¶ 21.

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

The Class is defined as "All individual, entity and associations of owners in the State of California who own HVAC units with Daikin Coils installed in them," and the Subclass is defined as follows:

> All individual, entity and associations of owners of originally constructed individual dwelling units, other than condominium conversions, in the State of California in which purchase agreements for the individual dwelling units were signed by the original seller on or after November 2, 2005 and in which the residential units had installed as part of the original construction HVAC units with Daikin Coils installed in them.

FAC ¶¶ 13-14. Plaintiff is a member of the Class and Subclass she seeks to represent, thus the FAC alleges that Plaintiff is an owner of an originally constructed individual dwelling unit that was not a condominium conversion, in the State of California, that her purchase was made "on or after November 2, 2005," and that her residential unit was equipped with an HVAC unit containing a Daikin Coil as part of the original construction. FAC ¶¶ 14, 21. On its face, the FAC pleads ample details to satisfy the notice pleading standard.

Defendants' own judicial admissions in their December 9, 2015 Notice of Removal [Dkt. #1] ("Notice of Removal") contradict their arguments that they "cannot begin to evaluate the substance of Plaintiff's claims, let alone meaningfully answer them." *Contrast* Mot. at pp.6-7 *with* Notice of Removal at ¶¶ 9-14. Based on Plaintiff's allegations in her original complaint—which had fewer allegations than the FAC—Defendants were capable of specifically determining:

- That "the number of putative class members exceeds 100" (Notice of Removal at ¶ 9);

- That the value of the claims specifically concerning "Daikin Coils" exceeds $5,000,000 (Notice of Removal at ¶¶ 10-11);

- That Daikin shipped more than 22,000 Daikin Coil units to California between 2010 and 2015 (Notice of Removal at ¶ 12);

- That Plaintiff "alleges that the Daikin Coils are 'defective' in that they allegedly 'leak ever-increasing amount of refrigerant…leading to costly repairs, and eventually, the total failure of the Daikin Coils,'" and that "'repairs for the damages caused by Daikin Coils are significant'" (Notice of Removal at ¶ 13);

- That Daikin pays authorized contractors approximately $360 per replacement of a Daikin Coil (Notice of Removal at fn. 6);

- That the "'low-end' numbers" for each class member's potential claim is $228 (Notice of Removal at ¶14); and

- That in addition to claiming costs for repairs to, replacement of and damage caused by the Daikin Coils, Plaintiff also seeks diminution in home value, attorneys' fees, and punitive damages (even going so far as to calculate total recoveries including punitive damages and attorneys' fees) (Notice of Removal ¶ 16 & fns. 9-10).

Defendants' own very detailed analysis of the products at issue, liability risks they face, calculations of each class member's "low-end" recovery of $228 per unit and all-in monetary risk on the case in their Notice of Removal belies their claims of ignorance on which they almost entirely base their Motion to Dismiss.

### B.   Plaintiff's Claims Are Not Barred by the Economic Loss Rule

Defendants argue that Counts I through IV of Plaintiff's First Amended Complaint should be dismissed because of the economic loss rule. Mot. at pp. 7-8. Even Defendants acknowledge an exception to the economic loss rule when defective products cause damage to other property and expose people to risk of injuries, which is precisely what Plaintiff alleges here. Mot. at p.8; *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004). A long list of cases uphold strict liability and negligence actions for defective products that are alleged

1    to risk damage to people or other property. *See, e.g.*, *Robinson*, 34 Cal.4th 979;

2    *Erlich v. Menezes*, 21 Cal.4th 543 (1999). Moreover, the economic loss rule does

3    not preclude claims for strict products liability and negligence where the defective

4    product causes damage to other portions of a larger product incorporating the

5    defective product. *Jimenez v. Super. Ct.*, 29 Cal.4th 473, 484 (2002). Moreover, an

6    "injury in fact" may be established by allegations of either "actual *or* imminent"

7    injury. *Clapper v. Amnesty Int'l, USA*, 133 S.Ct. 1138, 1147 (2013) (emphasis

8    added).

9        In addition, it is reasonably inferred from Plaintiff's allegations that a special

10   relationship exists between the parties such that Plaintiff, the Class and the Subclass

11   can recover for economic loss on a claim for negligence. *J'Aire Corp. v. Gregory*,

12   24 Cal.3d 799, 804 (1979). Factors considered in determining whether a special

13   relationship exists are as follows: "(1) the extent to which the transaction was

14   intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the

15   degree of certainty that the plaintiff suffered injury, (4) the closeness of the

16   connection between the defendant's conduct and the injury suffered, (5) the moral

17   blame attached to the defendant's conduct and (6) the policy of preventing future

18   harm." *J'Aire*, 24 Cal.3d at 804. Here, Plaintiff and others similarly situated are the

19   intended beneficiaries of the sale of the HVAC unit given that they are the ultimate

20   purchasers of residences equipped with these products. Second, given that the

21   HVAC units are purchased as part of residential and commercial building units, it

22   is reasonably foreseeable that any defect in the product would affect residents and

23   property owners experiencing a diminution in property value because of the defect.

24   Third, Plaintiff, the Class and the Subclass have suffered injury given that the

25   product defect has manifested, causing corrosion and leading to inconsistent

26   temperature control. Moreover, there is a direct connection between Defendants'

27   conduct and the injury suffered given that it is Defendants' defective product that

28   puts Plaintiff, the Class and the Subclass on the hook for costly repairs and leads to

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

diminished property values. Finally, there can be no question that there exists a public policy in favor of discouraging product manufacturers from placing defective products known to fail in the general marketplace on such a wide scale.

Though not required, Plaintiff alleges actual and imminent harm by Defendants' defective Daikin Coils. In Paragraph 31 of the FAC, Plaintiff alleges that "the Class and the Subclass have suffered and/or are in danger of suffering injury and/or substantial property damage due to the defective Daikin Coils including, but not limited to, damage to surrounding property caused by leaked refrigerant." In Paragraph 54, Plaintiff similarly alleges that "Plaintiff, the Class and the Subclass have suffered, or are at imminent risk of suffering, substantial damage to property due to leaked refrigerant, and Plaintiff, the Class and the Subclass will continue to suffer, or be at imminent risk of suffering such substantial property damage in the future." Plaintiff further alleges that "Defective Daikin Coils have diminished the value of Plaintiff, the Class and the Subclass' homes and the repairs for the damages caused by Daikin Coils are significant." FAC ¶ 32. These damages have already occurred and are due to the fact that Defendants' product is already failing due to its defective condition, causing corrosion, inconsistent temperature control, and diminished property values. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*, 754 F. Supp. 2d 1145, 1161-64 (C.D. Cal. 2010).

As demonstrated above, Plaintiff also alleges that the defects will damage other surrounding property, which can include damage to walls, floors and other items stored in the vicinity of a Daikin unit. Plaintiff has also alleged that the defect will cause refrigerant—a dangerous controlled substance that is harmful to people—to leak, and those leaks can reach in confined spaces where it will cause health risks. *See* FAC at ¶ 31.

Because Plaintiff alleges the presence of defects in the products, the present harm in that the unit is not delivering accurate climate control, that the unit has

diminished the value of Plaintiff's property and that the defects in Daikin Coils will damage other property and create health risks, the economic loss rule does not apply to Plaintiff's tort liability claims.

### C.     The FAC Adequately Pleads Strict Liability-Failure to Warn

Defendants do not cite any authority for their argument that Plaintiffs must allege the particular danger posed by the defective Daikin Coils. Even the case cited and quoted by Defendants, *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009), provides that Plaintiff need only allege that the Daikin Coils "'had potential risks that […] presented a substantial danger to users of the product" and that such risks were known or knowable by Defendants at the time of manufacture, distribution, or sale." Mot. at p. 9. The FAC precisely alleges this:

> The Daikin Coils had risks that were known or knowable in light of the scientific knowledge that was generally accepted at the time of manufacture, distribution and/or sale. Such risks include, but are not limited to, the risk of substantial property damage caused by leaked refrigerant.
>
> The risks in the Daikin Coils presented a substantial danger when the Daikin Coils were used or misused in an intended or reasonably foreseeable way.

FAC ¶¶ 36-37. In addition, it is a common understanding that refrigerant is a dangerous controlled substance that is harmful to people and will cause health risks, especially in a confined location. *See* FAC at ¶ 31.

### D.     The FAC Adequately Pleads Manufacturing and Design Defects

Defendants seek to impose additional pleading requirements on Plaintiff's allegations for strict products liability. The elements for strict products liability claims include the following: (1) that the product was being used in an intended or reasonably foreseeable manner; (2) that the product was in a defective condition when it left the defendant's possession; and (3) the defective product proximately

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

caused the plaintiff's injuries or damages. *See Blevin v. Coastal Surgical Institute*, 2015 Cal. App. LEXIS 18, at *13 (Jan. 12, 2015); *Collins v. Navistar, Inc.*, 214 Cal. App. 4th 1486, 1500 (2013); *Pannu v. Land Rover North America, Inc.*, 191 Cal. App. 4th 1298, 1310 (2011). Plaintiff's FAC satisfies these requirements.

First, Plaintiff alleges that "[t]he Daikin Coils contained a manufacturing defect when they left Defendants' possession." FAC ¶ 47. Plaintiff further alleges that "Plaintiff, the Class and the Subclass suffered harm, damages and economic losses, and Plaintiff, the Class and the Subclass will continue to suffer such harm, damages, and economic loss in the future." FAC ¶ 54. This damage allegation is followed by allegations that "Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's, the Class' and the Subclass' harm, damages and economic losses." FAC ¶ 55. Paragraph 4 of the FAC alleges, "Instead of performing their intended purpose of cooling air, Daikin coils fail to properly operate under normal conditions." FAC ¶ 4. It is reasonably inferred that Plaintiff's allegations pertain only to use of the HVAC units in a foreseeable manner "under normal conditions."

Defendants further claim that Plaintiff does not state a claim for design defect, even though Plaintiff makes specific factual allegations as to how the design defect in the Daikin Coils causes the HVAC unit to fail and alleges the harm that results from that defect. Specifically, Plaintiff alleges as follows:

> The failure of Daikin Coils to perform as intended is an unavoidable consequence of their design. Daikin Coils are made of copper tubing, which is susceptible to a process called "formicary corrosion." Formicary corrosion is caused by a chemical reaction between the copper tubing and volatile organic compounds commonly found within the air of the home. This process results in microscopic holes within the tubing that cause the Daikin Coils to leak refrigerant and ultimately fail. The corrosion and failure of Daikin Coils are due to Defendants'

9

1    actions, including but not limited to, selecting the wrong alloy,

2    defective manufacture of the Daikin Coils and failing to properly ensure

3    that the Daikin Coils will perform for their useful life and are fit for

4    their intended purpose of absorbing heat from the surrounding air.

5  FAC ¶ 5. Plaintiff alleges that by design, the Daikin Coils are defective and fail

6  when operating under normal conditions.

7      **E.    The FAC Adequately Pleads Negligence**

8          Defendants argue in their Motion to Dismiss First Amended Complaint that

9  Plaintiff's Negligence cause of action fails to allege how Defendants breached a

10 duty to Plaintiff and how Plaintiff was harmed.  However, Plaintiff amply alleges

11 Defendants' duties owed to Plaintiff, the Class and the Subclass, alleges the breach

12 of those duties, and alleges that Plaintiff has a defective product of the kind

13 possessed by all putative class and subclass members.

14         Plaintiff alleges, "Defendants had a duty to exercise reasonable care in the

15 design, formulation, testing, manufacture, labeling, marketing, sale and/or

16 distribution of the Daikin Coils." FAC ¶ 70. Plaintiff further alleges that "[d]espite

17 the fact that Defendants knew or should have known that their products posed a

18 serious risk of harm to consumers and/or property, Defendants unreasonably

19 continued to manufacture and market their products and failed to exercise

20 reasonable care with respect to post-sale warnings and instructions for safe use."

21 FAC ¶ 72. Finally, Plaintiff alleges, "The named Plaintiff can fairly and adequately

22 represent the Class and Subclass because she is a Class and Subclass Member, has

23 claims that are typical of the Class and Subclass, and there is no reason why she

24 cannot adequately represent the Class and Subclass." It is, therefore, reasonably

25 inferred from the allegations—if not directly stated—that Plaintiff's Daikin Coil

26 has the defect and that defect is causing harm to Plaintiff.

27 ///

28 ///

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

**F.     The FAC Adequately Pleads Claims for Breach of Warranty**

A claim for Breach of Express Warranty requires that the plaintiff plead and prove the following: (1) an "'affirmation of fact or promise'" or a "'description of the goods;'" (2) "the statement was 'part of the basis of the bargain;' and (3) the warranty was breached. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010), *quoting Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985). Plaintiff has satisfied these elements.

First, Plaintiff pled that Defendants' statements constitute an "affirmation of fact or promise" or a "description of the goods." Plaintiff alleged that Defendants' statement that its products, including Plaintiff's HVAC unit and Daikin Coil, are "sold pursuant to [its] standard terms and conditions of sale, including Limited Product Warranty" is an express warranty. (FAC ¶ 79.) Defendants' statement is quite clearly an "affirmation of fact or promise" that its products are covered by Defendants' standard terms and conditions of sale, which include an express "Limited Product Warranty." These are the terms used by Defendants in their warranty, and Plaintiff has pled those terms verbatim. In addition, Defendants are certainly aware of the terms of its "Limited Product Warranty" and made it part of the basis of the bargain.

Plaintiff further alleges that Defendants warranted that their products provided the benefits of "[h]igh efficiency, low operating costs," "reliable operation," and "low-cost maintenance and service." *See* FAC ¶ 79. Defendants argue that the latter statement is not an express warranty because one district court "held that a representation of 'maintenance-free' was puffery because 'no product is ever maintenance free, and no consumer reasonably could have that expectation." Mot. at pp. 14-15. Despite Defendants' attempt to draw a false equivalence, promising that a product enjoys "low-cost maintenance and service" is not the same as claiming that a product will be "maintenance-free" in perpetuity.

///

Contrary to Defendants' arguments, Plaintiff is not required to allege that she was exposed to the warranty statement(s) prior to purchasing the product. Mot. at p. 15. "Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement." *Weinstat v. Dentsply Internat., Inc.,* 180 Cal. App. 4th 1213, 1229 (2010). The California Court of Appeal in *Weinstat* stated the following with respect to timing:

> "**The precise time when words of description or affirmation are made … is not material. The sole question is whether the language … [is] fairly to be regarded as part of the contract.**" (Cal. U. Com. Code com., 23A pt. 1 West's Ann. Cal. U. Com. Code, supra, foll. § 2313, com. 7, p. 297.) Thus, the California Uniform Commercial Code contemplates that affirmations, promises and descriptions about the goods contained in product manuals and other materials that are given to the buyer at the time of delivery can become part of the basis of the bargain, and can be "fairly … regarded as part of the contract," notwithstanding that delivery occurs **after the purchase price has been paid**.

*Weinstat*, 180 Cal. App. 4th at 1230 (emphasis added). "The notice requirement of section 1769, however, is not an appropriate one for the court to adopt in actions by injured consumers against manufacturers with whom they have not dealt." *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 61 (1963); *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1057 (C.D. Cal. 2014). Because Plaintiff is an injured consumer who has not had any prior dealings with Defendants, she was not required to give pre-litigation notice to Defendants regarding her defective Daikin Coils.

Similarly, Defendants are incorrect as to what Plaintiff is required to plead in order to state a claim for Implied Warranty of Merchantability. Defendant's sole argument is that Plaintiff's claim for breach of the implied warranty of

merchantability fails for lack of vertical privity.[1] Though a plaintiff must ordinarily establish vertical privity, there are several well-established exceptions to this general rule, including where the plaintiff is a third-party beneficiary to the original contract. CAL. CIV. CODE § 1559. California case law permits a plaintiff to bring an implied warranty action "even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract." *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69-70 (citations omitted) (1978).

In *Cartwright v. Viking Industries, Inc.*, the court stated that homeowners could bring an implied warranty claim against the manufacturer of defective windows installed in their homes. 249 F.R.D. 351, 356 (E.D. Cal. 2008). The court in *Cartwright* reasoned that because the homeowners were the intended ultimate consumers of the windows, they could sue to enforce the contract as third-party beneficiaries. *Id.*; *see also Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69-70 (Cal. App. 2d Dist. 1978). Just as in *Cartwright*, Plaintiff is a homeowner who has alleged that a defective product incorporated into her home was "not of the same quality as those generally acceptable in the trade." FAC ¶¶ 101, 103. Plaintiff was the intended ultimate consumer of the HVAC unit which contained the defective Daikin Coil, and thus may enforce the original contract as a third-party beneficiary.

Finally, Plaintiff alleges a breach of the implied warranty of fitness for a particular purpose. Specifically, Plaintiff has alleged the following:

> **At the time the HVAC units were purchased**, Defendants knew or had reason to know that HVAC units containing Daikin Coils would be used **for a particular purpose in Plaintiff, the Class and the Subclass' homes** and that **purchasers and/or installers** would justifiably

---

[1] Plaintiff has not alleged a claim under California's Song-Beverly Act, Cal. Civ. Code § 1792, *et seq.*, and thus will not address Defendants' arguments addressing that provision.

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

rely on Defendants' skill and judgment in selecting, providing, and/or furnishing Daikin Coils suitable for that particular purpose.

FAC ¶ 91 (emphasis added). Here, Plaintiff alleges that, at the time Defendants' HVAC units were purchased for use in Plaintiff's condominium building, Defendants knew or had reason to know that the units would be used for a particular purpose and that the original purchaser and/or installers would rely upon Defendants' skill and judgment in meeting that particular purpose: namely, providing a large number of climate control zones in a multi-story, residential condominium setting.

With respect to Defendants' vertical privity argument, it fails for the same reason it failed in the merchantability context: Plaintiff is a third-party beneficiary of the original contract, and as such, may enforce the contract against Defendants, including the implied warranty of fitness for a particular purpose.

### G.    The FAC Adequately Pleads California UCL Violations

#### 1.    Plaintiff has standing

Plaintiff alleges an economic injury that was caused by Defendants' unfair business practices as required. *See Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (2011). The California Supreme Court in *Kwikset* explained that the text of Proposition 64 revising the UCL's standing requirement "establishes expressly that in selecting this phrase [injury in fact] the drafters and voters intended to incorporate the established federal meaning." *Kwikset*, 51 Cal.4th at 322. The federal meaning of "injury in fact" is the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). For a UCL claim, the only difference is that the injury must be economic.

Plaintiff alleges that she purchased her HVAC unit as part of her condominium unit, and she is now stuck with a defective HVAC unit. In addition,

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff has alleged the economic injury of diminution in value of her home resulting from being equipped with a defective HVAC unit that fails to provide reliable climate control, is losing refrigerant, is damaging other components of the HVAC unit and puts other property and people at risk.

Defendants further claim that Plaintiff cannot seek injunctive relief for her claims and claims made on behalf of the Class and Subclass. Mot. at p.19. To the contrary, Plaintiff alleges the requisites for injunctive relief, including impending future harm.

### 2.   Plaintiff's fraud UCL claims

Contrary to Defendants' arguments, the pleading requirements for fraud Unfair Competition Law ("UCL") claims is not as strict as those under Federal Rule of Civil Procedure 9(b). Rule 9(b) requirements may not be met if the plaintiff fails to identify specific misrepresentations upon which he or she relied. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). But for a fraud UCL claim, "a plaintiff need [not] demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Tobacco Cases*, 46 Cal.4th at 327. Accordingly, the Court should find that Plaintiff sufficiently alleges a UCL claim based on Defendants' fraud.

### 3.   Plaintiff's "unlawful" prong claim

Defendants argue that Plaintiff fails to assert a claim under the "unlawful" prong of the UCL because she "failed to state a claim for any violation of the law…" Mot. at p. 22. Section 17200 bars "any unlawful, unfair, or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. "To state a claim under the Unfair Practices Act, [the plaintiff] must demonstrate that the [defendant] engaged in a business practice that was unlawful or unfair." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 992 (2001). "By proscribing 'any unlawful' business practice, ''section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-*

15

*Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). Defendants' unfair competition liability is, therefore, co-extensive with its tort liability.

Plaintiff alleges unlawful conduct throughout the First Amended Complaint, including breaches of warranties. Because the UCL does not contain a formal pleading requirement that each unlawful business practice be reiterated and identified in this separate cause of action, Plaintiff states a claim for UCL violations under this prong.

4.   Plaintiff's "unfair" prong claim

Again, Defendants claim that Plaintiff is required to specifically plead that she has "experienced a leak in a Daikin Coil," and that her UCL claim fails to "plausibly allege Defendants' knowledge of the claimed defect." Mot. at p.22. California courts are split as to the definition of "unfair" in the consumer context, and Defendants do not provide one in their Motion, choosing instead to reiterate arguments that Plaintiff's claims of harm need to be more specifically pled as to her, in particular, or that Plaintiff need somehow make a heightened showing to back her claim of Defendant's knowledge of the claimed defect. *See, e.g.*, *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252-53 (2011).

*Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 720, n.23 (2001), provides at least some appropriate guidance, suggesting that the Court should consider whether "the gravity of the harm to the victim outweighs the utility of the defendant's conduct." Here, Plaintiff alleges that Defendants knew their Daikin Coils were defective in that they quickly fail under normal operating procedures and yet they warranted that they were free from defects. These defects result in expensive replacement costs well before the expiration of the useful life of the product and can cause substantial harm to person and property. The Court would be hard-pressed to find any fairness in, for example, Defendants' failure to honor its warranties.

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

Because Plaintiff's overall factual allegations state a claim of unfair business practices by Defendants, Plaintiff has stated a UCL claim under the "unfair" prong.

**H.  The FAC Adequately Pleads Right to Repair Act Violations**

Defendants' challenges to Plaintiff's claims for violations of the Right of Repair Act ("RORA") misrepresent Plaintiff's allegations and misstate the applicable legal standards in several significant ways.

1.  Plaintiff alleged standards violations and damage to other products.

First, Plaintiff clearly alleges that the Daikin Coils are components of a "living space air-conditioning" unit within the meaning of California Civil Code section 896(g)(5). FAC ¶ 120. Section 896(g)(5) sets forth the size and efficiency design criteria that govern living space air-conditioning systems in residential construction. Section 896(g)(5) reads: "Living space air-conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor." Cal. Civ. Code § 896(g)(5). Plaintiff has alleged that the "[t]he living space air-conditioning components, including the Daikin Coils, installed in Plaintiff's and the Subclass' residences were not provided in a manner consistent with the efficiency design criteria specified in Title 24 of the California Code of Regulations and/or its successors." FAC ¶ 120. Thus, Plaintiff has unequivocally alleged that Defendants' misconduct caused a violation of the living space air-conditioning efficiency design standards of § 896(g)(5). Defendants' invocation of § 896(g)(3)(E)'s exclusionary provision is simply irrelevant.

Moreover, Plaintiff alleges in detail the nature of the defect that has caused Daikin Coils to fall short of the efficiency design criteria of § 896(g)(5). Plaintiff describes the Daikin Coils' tendency to corrode, leak refrigerant, malfunction and eventually fail under normal operating conditions and within the products' useful life, and alleges that she owns an HVAC unit containing one of these defective

Daikin Coils. FAC ¶¶ 28, 29. Plaintiff further alleges that her defective Daikin Coil poses a danger of substantial damage to surrounding property and injury to persons in her condominium unit. FAC ¶ 31.

Defendants attempt to minimize the harm that the defects cause, but common sense is clear on this point: where Plaintiff has alleged that an essential component of her HVAC unit is corroding and leaking ever increasing amounts of a refrigerant chemical, Plaintiff is already suffering diminution in the value of her property, damage to the HVAC unit and damage other parts of the HVAC unit and that she is exposed to the risk of damage to her surrounding other property within the useful life of the product. More concerning, she is exposed to health risks posed by leaking refrigerant.

Second, Defendants misstate the express scope of RORA, claiming that the living space air-conditioning standards of § 896(g)(5) only apply to "builders and contractors who size and install air-conditioning systems" and not manufacturers such as themselves. Defendants do not cite any authority for this broad proposition because they cannot. Their claim directly contradicts RORA's plain language:

> In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, design, specifications, surveying, planning, supervision, testing, or observation of construction, a . . . material supplier, **individual product manufacturer**, or design professional, shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title.

Cal. Civ. Code § 896 (emphasis added).  Defendants do not contest that they are individual product manufacturers, again, because they cannot. As individual product

manufacturers, they are subject to the standards set forth in § 896 and are liable when their manufactured products fail to live up to those standards.

Third, Defendants mischaracterize Plaintiff's allegations by stating that Plaintiff has failed to allege a defect in the "size and efficiency design criteria" of her Daikin Coil. This claim is false for the same reason outlined above: Plaintiff has alleged that the Daikin Coils, including her own, are steadily corroding and leaking ever-increasing amounts of refrigerant. Refrigerant is an essential component of any HVAC unit. Plaintiff alleged this in her first amended complaint in unequivocal terms: "HVAC units require refrigerant to cool air. The less refrigerant an HVAC unit houses, the less efficiently it can cool air. The Daikin Coils' tendency to leak refrigerant will render an HVAC unit completely inoperable." FAC ¶ 82. The logical and reasonable inference to be drawn from Plaintiff's allegations is unavoidable: an HVAC unit that contains an evaporation coil that corrodes and leaks the unit's very essential refrigerant, cannot meet even the most permissive of efficiency design standards. Put simply, an efficient HVAC unit does not leak refrigerant.

Fourth, Defendants claim without any authority that the standards cited by Plaintiff are not actionable. Not only does Plaintiff allege that her "living space air-conditioning components . . . were not provided in a manner consistent with the efficiency design criteria specified in Title 24 of the California Code of Regulations and/or its successors . . . ." (FAC ¶ 120), but § 896(g)(5) expressly provides that the efficiency design criteria of Title 24 of the California Code of Regulations, and any Mechanical Code or ASHRAE provisions incorporated therein are actionable. It would be premature on this undeveloped record for the Court to dismiss Plaintiff's highly technical RORA claim without the benefit of discovery, expert testimony and fuller briefing on this issue.

2.   RORA does not require Plaintiffs to give pre-litigation notice.

Defendants' argument that Plaintiff's is required to give pre-litigation notice is contradicted by RORA's purposes and express provisions.   The Court should

19

reject Defendants' arguments here for at least three independent reasons: (1) Cal. Civ. Code § 931 expressly exempts Plaintiff's class action claims from RORA's pre-litigation procedures; (2) Defendants cannot assert the "builder's" remedy for noncompliance with RORA's pre-litigation procedures because they are not a builder; and (3) even if Plaintiff was required to give pre-litigation notice, Defendants' sole remedy is to request a stay of the case.

Section 931 provides an exception to the pre-litigation requirements of Chapter 4 of RORA in the case of certain class action claims. In relevant part, § 931 reads: "As to any class action claims that address solely the incorporation of a defective component into a residence, the named and unnamed class members need not comply with this chapter [i.e., Chapter 4]." Cal. Civ. Code § 931. Plaintiff's claim falls squarely within the plain meaning of § 931's exception to RORA's pre-litigation requirements because it is (1) a class action that (2) addresses solely the incorporation of a defective component into a residence. FAC ¶¶ 12, 117. Thus RORA expressly excludes Plaintiff's claims from any pre-litigation procedures.

Moreover, the pre-litigation requirements do not apply here because Defendants are not builders. Section 930—the section that provides the remedy for a violation of the pre-litigation procedure—gives only a "builder" a remedy, meaning that the pre-litigation procedures do not apply to manufacturers at all. Cal. Civ. Code § 930(b) (only a "**builder** may bring a motion to stay any subsequent court action or other proceeding until the requirements of this chapter have been satisfied." (emphasis added)). Consistently, § 910(a) provides that a claimant "shall provide written notice . . . **to the builde**r . . . ." Nowhere in RORA does it state that a claimant must give an *individual product manufacturer* the benefit of RORA's pre-litigation procedures. Finally, § 936 *expressly precludes* the application of Chapter 4 of RORA, including section 930(b)'s "builder's" remedy, to individual product manufacturers like Defendants: "Each and every provision of **the other chapters** of this title apply to . . . individual product manufacturers . . . ." Cal. Civ. Code § 936

20

(emphasis added). Because Defendants are product manufacturers and not builders, the pre-litigation procedures under RORA do not apply to claims against them. Defendants' reliance on the unpublished opinion *Kingsbury v. U.S. Greenfiber, LLC*, No. cv 08-00151 2009 U.S. Dist. LEXIS 92014 is misplaced for one simple, inescapable reason: the "builder," PULTE HOME CORPORATION, was a defendant in that case and asserted RORA's right to repair pre-litigation processes. Defendants in this case are not "builders" and thus cannot do the same.

Alternatively, even if the Court were to find that RORA's pre-litigation procedures apply to Plaintiff, Defendant's only remedy under RORA is to request a stay of the case until the requirements of RORA are satisfied, not dismissal of the claim as Defendants demand.

3.    At a minimum, the FAC alleges violations of Cal. Civ. Code § 897.

Finally, even if the Court were to find that Plaintiff failed to allege an express standards violation under RORA, Plaintiff alleges sufficient facts to state a claim under RORA's catch-all provision, which reads: "The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." Cal. Civ. Code § 897.

As set forth above, Plaintiff alleges that a component of her home, the Daikin Coil in her HVAC, unit causes damage to itself, to its components and to other property within the useful life of the product. Thus, the Court should find that Plaintiff also alleges facts sufficient to support a claim for violation of Cal. Civ. Code § 897 under RORA. If the Court finds that Plaintiff does not adequately allege such a claim in her FAC, Plaintiff respectfully requests leave to file an amended complaint that separately specifies such a claim.

///

///

///

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

**IV.   IF THE COURT IS INCLINED TO DISMISS ANY CAUSE OF ACTION, THE COURT SHOULD INSTEAD GRANT LEAVE TO AMEND**

Dismissal without leave to amend is appropriate only where the Court determines that deficiencies in the complaint cannot possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). To the extent that the Court agrees that additional factual allegations are required so that Defendants can assess Plaintiff's claims, Plaintiff can and hereby requests leave to present those additional facts.

For one, Plaintiff can more specifically describe her particular HVAC unit by Model No., Part No., and manufacturing date. Though Plaintiff does not contend or agree that Plaintiff's claims of representing a Class and Subclass of owners of Defendants' HVAC units are limited to those of Plaintiff's same model number and/or part numbers, Plaintiff has access to and can provide the model and part numbers associated with her particular HVAC unit.

In addition, Plaintiff can allege, "Plaintiff purchased said HVAC unit as part of her new construction condominium residence purchased on September 9, 2010." Though reasonably inferred from the allegations in the FAC, Plaintiff can further contend that the defective Daikin Coils and their failures has or most certainly will cause harm to person and property, including, but not limited to, shorting out the HVAC unit, overheating the HVAC compressor, which requires a costly replacement compressor, a diminution in the value of homes equipped with the Defendants' HVAC units, poses a slipping hazard due to leaking refrigerant, can cause damage to flooring and other items in the immediate vicinity of the HVAC unit, and poses a safety risk to residents during extremely hot weather.

Lastly, Plaintiff can amend her claim for manufacturing defect to allege, in the alternative to other product defect claims, that "[t]he Plaintiff's, the Class' and the Subclass' HVAC units differed from Defendants' intended result such that they

fail under ordinary circumstances and with foreseeable use long before the end of their expected useful lives."

Because Plaintiff can amend her claims to cure any possible deficiencies found in the First Amended Complaint, Plaintiff respectfully requests leave to amend should the Court agree that any of Plaintiff's causes of action are subject to dismissal.

## V.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Amended Complaint in its entirety. In the alternative, Plaintiff requests leave to amend any cause of action found to be deficient.

Dated:  February 1, 2016            KASDAN LIPPSMITH WEBER TURNER LLP

                                      By:  _____

                                          Kenneth S. Kasdan
                                          Graham B. LippSmith
                                          Jaclyn L. Anderson
                                          Attorneys for Plaintiff, the Class and the Subclass

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT