Rick L. McKnight (State Bar No. 55183)
fmcknight@jonesday.com
Charlotte S. Wasserstein (State Bar No. 279442)
cswasserstein@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071
Telephone:  (213) 489-3939

Theodore M. Grossman (*pro hac vice*)
tgrossman@jonesday.com
Sharyl A. Reisman (*pro hac vice*)
sareisman@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-3939

Richard J. Bedell (*pro hac vice*)
rjbedell@jonesday.com
Louis A. Chaiten (*pro hac vice*)
lachaiten@jonesday.com
JONES DAY
North Point, 901 Lakeside Ave.
Cleveland, OH  44114
Telephone:  (216) 586-3939

*Attorneys for Defendant Daikin Applied Americas Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA PARK-KIM, individually and on behalf of all others similarly situated; and MARIA CECILIA RAMOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIKIN APPLIED AMERICAS INC., F/K/A MCQUAY INTERNATIONAL, and DOES 1 through 50, inclusive<br><br>Defendants. | Case No. 2:15-cv-09523-CAS-KK<br><br>Assigned to Hon. Christina A. Snyder<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**<br><br>**Hearing Date: January 23, 2017**<br>**Hearing Time:  10:00 am**<br>**Location:  Courtroom No. 5**<br>**Judge:  Hon. Christina Snyder** |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

SUMMARY OF THE ALLEGATIONS .................................................................... 1

LEGAL STANDARDS ............................................................................................. 3

ARGUMENT ............................................................................................................ 4

I.     PLAINTIFFS FAIL TO STATE A RORA CLAIM ........................................ 4

       A.     Plaintiffs Cannot State A Claim Under § 896(g)(4) or (g)(5) ............. 4

       B.     Plaintiffs Cannot State a Claim Under § 897 ....................................... 7

II.    PLAINTIFFS FAIL TO STATE A CLRA CLAIM ......................................... 8

       A.     Plaintiffs' CLRA Claim Is Facially Deficient Under Rule 9(b) ........... 8

       B.     Plaintiffs Lack Standing To Assert CLRA Claims .............................. 10

       C.     The CLRA Claim Is Time-Barred ...................................................... 10

III.   THE COURT SHOULD DISMISS WITH PREJUDICE ............................... 11

CONCLUSION ....................................................................................................... 11

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

- i -

# TABLE OF AUTHORITIES

**Page**

CASES

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ............................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 3, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 4, 6

*Boyko v. Terveno, LP*,
  No. 15CV2088 JM(JLB), 2016 WL 308592 (S.D. Cal. Jan. 26,
  2016) ........................................................................................................ 8

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) ................................................................. 10

*Greystone Homes, Inc. v. Midtec, Inc.*,
  168 Cal. App. 4th 1194 (2008) ............................................................. 6, 7

*In re Sony PS3 Other OS Litig.*,
  551 F. App'x 916 (9th Cir. 2014) ............................................................... 9

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................... 8

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D.Cal. 2012) ....................................................... 9

*Nelson v. Pearson Ford Co.*,
  186 Cal. App. 4th 983 (2010) ................................................................. 10

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008), aff'd, 322 F. App'x 489 (9th
  Cir. 2009) ................................................................................................... 9

*Ortiz v. America's Servicing Co.*,
  No. EDCV 12-191 CAS (SPx), 2012 WL 2160953 (C.D. Cal. June
  11, 2012) ................................................................................................... 11

- ii -

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3   *Tyson v. Wells Fargo Bank*,
4       No. CV 12-5757-CAS, 2012 WL 4107877 (C.D. Cal. Sept. 18,
5       2012) ..................................................................................................... 11

6   *Vess v. Ciba-Geigy Corp. USA*,
7       317 F.3d 1097 (9th Cir. 2003) ......................................................... 4, 8

8   *Villalvazo v. Am.'s Servicing Co.*, No. CV 11-4868 CAS (MANx),
        2012 WL 3018059 (C.D. Cal. July 23, 2012) ..................................... 11

9   *Wilson v. Hewlett–Packard Co.*,
10      No. 09–cv–2253–RMW, 2009 WL 3021240 (N.D.Cal. Sept. 17,
        2009) ...................................................................................................... 9

11

12   **Statutes and rules**

13   Cal. Civ. Code § 896(g)(3)(E) ..................................................................... 7

14   Cal. Civ. Code § 896(g)(4) ..................................................................... 4, 5,6

15   Cal. Civ. Code § 896(g)(5) ..................................................................... 4, 5,6

16   Cal. Civ. Code § 897....................................................................................... 4, 7

17   Fed. R. Civ. P. 9(b) .................................................................................. 8, 10

18   Fed. R. Civ. P. 12(b)(6) .................................................................................. 3

19   **Other Authorities**

20
21   Harry D. Miller & Marvin D. Starr, Miller and Starr California Real
        Estate 4th Ed. § 33:2 (2016) .................................................................. 8
22

23

24

25

26

27

28

- iii -

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

This Court has *thrice* dismissed Plaintiffs' prior complaints in their entirety. *See* Order Granting Motion to Dismiss Third Amended Complaint, ECF No. 67 ("TAC Order") (Nov. 14, 2016); Order Granting Motion to Dismiss Second Amended Complaint, ECF No. 55 ("SAC Order") (Aug. 3, 2016); Order Granting Motion to Dismiss First Amended Complaint, ECF No. 39 (Mar. 17, 2016).  On its last go-round, this Court granted Plaintiffs leave to amend only as to their Right to Repair Act ("RORA") and California Consumers Legal Remedies Act ("CLRA") claims, dismissing all others with prejudice.  The Court specifically "admonished," moreover, that Plaintiffs could "only file a Fourth Amended Complaint to the extent they . . . attempt to correct the deficiencies identified" in its most recent Order.  TAC Order at 29-30.

Plaintiffs have not done so.  Rather than redressing the pleading failures this Court has already identified, the Fourth Amended Complaint contains nearly all of the same flaws that led to dismissal of their prior complaints.  In particular, Plaintiffs' RORA claims continue to rely on statutory provisions that are flatly inapplicable.  And Plaintiffs' CLRA claims come nowhere close to satisfying Rule 9(b)'s heightened pleading standards, and in any event fail for lack of standing and untimeliness.

This lawsuit has run its course.  This Court has been most patient with Plaintiffs, giving them chance after chance to plead a viable claim.  Further amendment would be futile.  Dismissal should be with prejudice on all counts.

## SUMMARY OF THE ALLEGATIONS

Plaintiffs' allegations are all too familiar by now.  Aside from eliminating those claims this Court dismissed with prejudice, the Fourth Amended Complaint differs from the earlier iterations in few relevant respects.

Plaintiffs allege that Defendant, together with unnamed "Doe" Defendants, "design[s], manufacture[s] and sell[s] heating, ventilation, and air conditioning . . .

units . . . that feature a component called an evaporator coil that is manufactured with aluminum-finned copper tubing ('Daikin Coils')."  Fourth Amended Complaint ("Compl.") ¶ 5.  Plaintiffs further allege that these evaporator coils[1] are susceptible to formicary corrosion—a specific form of corrosion that allegedly causes them to leak refrigerant and fail.  *See id.* ¶¶ 7-8, 31-37.

Plaintiff Park-Kim alleges that, in September 2010, she purchased a condominium that came equipped with a McQuay-brand HVAC unit manufactured in 2006.  *Id.* ¶ 40.  She further alleges that her condominium is in the EVO condominium complex, which opened its doors in 2008.  *Id.* ¶¶ 3, 70.  Plaintiff Park-Kim asserts that she "first became aware that her . . . HVAC unit was not functioning properly in June 2015"—at least seven years after installation—"when her tenant informed her that the unit was no longer adequately cooling" the condominium.  *Id.* ¶ 41.  In particular, Plaintiff Park-Kim avers that her tenant "experienced excessive heat in the residence" and complained that "the temperature inside . . . ha[d] reached upwards of 80 degrees."  *Id.* ¶ 42.  For the first time in this litigation, she also makes a conclusory allegation that her "HVAC unit became incapable of providing heating functionality."  *Id.* ¶ 43.  Plaintiff Park-Kim attributes her unit's failure to formicary corrosion, though she does not specify that any professional diagnosis of corrosion, let alone any specific form of corrosion, was ever made.  She alleges that she spent "thousands of dollars" to have a contractor test the unit for leaks, replenish it with refrigerant, and replace her original coil.  *Id.* ¶ 44.  She does not allege any further troubles with her unit since the coil replacement.

Plaintiff Ramos alleges that, in June 2009, she purchased a condominium in the EVO complex that came equipped with a McQuay-brand HVAC unit

---

[1] An evaporator coil is a series of tubes through which pressurized refrigerant runs.  *See* Compl. ¶ 6.  Such coils may be found in a variety of different products sold by a variety of manufacturers.

manufactured in December 2006. *Id.* ¶¶ 3, 48. She further alleges that she "first became aware that her . . . unit was not functioning properly in June 2015"—at least seven years after installation. *Id.* ¶ 49. Specifically, she asserts that "the unit had previously been able to cool [her] condominium in ten to fifteen minutes" but became unable "to do so even after running for twice that length of time." *Id.* ¶¶ 49-50. Like Plaintiff Park-Kim, Plaintiff Ramos now makes a conclusory allegation that her "HVAC unit became incapable of providing heat functionality." *Id.* ¶ 51. Also like Park-Kim, she attributes her unit's alleged failure to formicary corrosion notwithstanding the absence of any professional diagnosis thereof. *Id.* ¶¶ 52, 55. Plaintiff Ramos alleges that she spent "hundreds of dollars" in testing and refrigerant costs, though she does not allege that her coil was ever replaced. *Id.* ¶ 52.

Neither Plaintiff alleges that she purchased an HVAC unit from, saw or relied on any statement made by, or otherwise had any contact with Defendant prior to this litigation.[2]

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a plaintiff fails to plead facts that, if true, would entitle the complainant to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint must raise the right to relief beyond the speculative level, and a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* On a motion to dismiss, the court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. Moreover, to satisfy the heightened pleading requirements of Rule 9(b), which applies to allegations of

---

[2] Plaintiffs purport to represent a class of "[a]ll individual, entity and associations of owners in the State of California who own HVAC units with Daikin Coils installed in them," Compl. ¶ 14, as well as a Subclass, *id.* ¶ 15.

fraud, Plaintiffs must allege "*more* than the neutral facts necessary to identify the transaction," including the who, what, when, where, and how of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE A RORA CLAIM.

In dismissing Plaintiffs' Second and Third Amended Complaints, this Court held that Plaintiffs failed to state a RORA claim because the three provisions they invoke—Cal Civ. Code §§ 896(g)(4), 896(g)(5), 897—do not apply. Nothing has changed. Plaintiffs cannot state a claim under § 896(g)(4) and (g)(5) because, as this Court has already recognized, both provisions apply to installers and builders, not product manufacturers. The § 896(g)(4) claim fails for the additional reason that Plaintiffs have pleaded no plausible *facts* related to heating failures. And Plaintiffs cannot state a claim under § 897 both because that provision does not provide a freestanding claim for defective products and because they allege only economic losses.

### A.   Plaintiffs Cannot State A Claim Under § 896(g)(4) or (g)(5).

Sections 896(g)(4) and (5) provide:

> (4) Heating *shall be installed* so as to be capable of maintaining a room temperature of 70 degrees Fahrenheit at a point three feet above the floor in any living space if the heating was *installed pursuant to a building permit application* submitted prior to January 1, 2008, or capable of maintaining a room temperature of 68 degrees Fahrenheit at a point three feet above the floor and two feet from exterior walls in all habitable rooms at the design temperature if the heating was *installed pursuant to a building permit application* submitted on or before January 1, 2008.

> (5) Living space air-conditioning, if any, *shall be provided* in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor.

Cal. Civ. Code § 896(g)(4)-(5) (emphases added). As the italicized language makes clear (and this Court has previously held), both provisions "apply to HVAC installation or provision rather than the functioning of the HVAC generally." TAC

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

4

Order at 20.

Plaintiffs' claims in this case are about the functioning of their HVAC units, not those units' installation or provision. That is, Plaintiffs allege that a component of their units corroded, not that the units were incorrectly installed or improperly selected. Indeed, both Plaintiffs allege that they purchased their units *years* before any problems developed. Compl. ¶¶ 40-41 (alleging that Plaintiff Park-Kim purchased her condominium in 2010 and "first became aware" of the alleged malfunction in 2015); *id.* ¶¶ 48-49 (alleging that Plaintiff Ramos purchased her condominium in 2009 and "first became aware" of the alleged malfunction in 2015). Moreover, even if Plaintiffs' corrosion allegations could be construed to bear on installation or sizing (they cannot), Plaintiffs do not—and cannot—allege that *Defendant* installed, sized, or selected their HVAC units. Contractors and builders, not HVAC manufacturers, are responsible for doing that.

Plaintiffs attempt to plead around these fundamental defects with the conclusory allegation that "Defendant's negligent conduct . . . caused the installation in Plaintiffs' living spaces of . . . units that were destined to become incapable of meeting [the § 896(g)(4) and (g)(5) standards] well before the expiration of the product's useful life." *Id.* ¶¶ 60, 64. But, as an initial matter, this Court has thrice rejected Plaintiffs' "negligent conduct" allegations on multiple, independent grounds. *See* TAC Order at 7-13. And even if Plaintiffs could be said to have adequately pleaded negligence (they cannot), reciting those words does not transform their claim about coil corrosion into one about improper installation or incorrect unit selection. Were it otherwise, every plaintiff with a defective product could engineer a RORA claim through such creative pleading. Indeed, if one adds Plaintiffs' argument that a purportedly defective product is perforce improperly installed to Plaintiffs' argument that a claim for such improper "installation" does not arise until the product failure, the result is that RORA creates absolute and indefinite manufacturer liability for alleged design and manufacturing defects. And

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

that was *not* RORA's intent.  To the contrary,  RORA "principally appl[ies] to builders," not manufacturers, and "the California Legislature did not intend the RORA to supplant existing warranty law governing suits against manufacturers." *Id.* at 20, 22; *see also Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1222 (2008).

"If the Legislature intended for subdivisions (g)(4) and (g)(5) to create product liability for HVAC manufacturers, the Legislature would have used plainer language indicating as much,"  just as it did in for other § 896 subsections.  TAC Order at 21 (comparing § 896(f), which contemplates manufacturer liability, with § 896(g)(4), (5), and (14), which do not).  The Legislature declined to do so, providing a limited remedy against builders and contractors who install HVAC units incorrectly or choose the wrong type of unit.  *See id.* at 22.  Plaintiffs do not state such a claim, so this Court should thus dismiss both § 896 claims with prejudice.

Plaintiffs' § 896(g)(4) claim also suffers from another fatal flaw:  While Plaintiffs make relatively detailed factual allegations about cooling failures, alleging, for example, that Plaintiff Park-Kim "received complaints from her tenant that the temperature inside the unit has reached upwards of 80 degrees, even with the windows open, and that the excessive heat has affected the tenant's ability to sleep at night,"  Compl. ¶ 42, factual allegations about heating failures are nowhere to be found.  Plaintiff Park-Kim does not allege that her tenant ever complained about the condominium's being too cool, and Plaintiff Ramos does not allege that she ever experienced cold temperatures.  Plaintiffs thus have not pleaded "plausible," "factual" allegations sufficient "to raise a right to relief above the speculative level" with respect to their heating claim.  *Twombly*, 550 U.S. at 555-56; *see also Iqbal*, 556 U.S. at 678, 681 ("[N]aked assertion[s] devoid of further factual enhancement" "disentitles them to the presumption of truth" (citation omitted)).  Such failure constitutes an independent basis for dismissal of their

1    § 896(g)(4) claim.

2        **B.    Plaintiffs Cannot State a Claim Under § 897.**

3        Plaintiffs' § 897 claim fails for two reasons:  § 897 does not apply to product

4    manufacturers, and § 897 claims are subject to the economic loss rule.

5        Section 897 provides that "[t]he standards set forth in this chapter are

6    intended to address every function or component of a structure. To the extent that a

7    function or component of a structure is not addressed by these standards, it shall be

8    actionable if it causes damage."  Cal. Civ. Code § 897.  But, as this Court

9    previously recognized, "liability for manufacturers pursuant to [§] 897 is limited by

10   the provisions of [§] 896(g)(3)(E)," which, states that RORA "does not apply in any

11   action seeking recovery solely for a defect in a manufactured product located within

12   or adjacent to a structure."  TAC Order at 22 (quoting Cal. Civ. Code

13   § 896(g)(3)(E)).  That provision, California courts have held, "bar[s] actions"—

14   including those brought under § 897—"in which the claimant seeks to recover for a

15   defect in a product that *does not* violate one of the standards set forth in section

16   896."  *Greystone Homes, Inc.*, 168 Cal. App. 4th at 1222; *see also* TAC Order at

17   22-23.

18       This Court previously dismissed Plaintiffs' § 897 claim on exactly that basis.

19   *Id.* at 23.  Nothing has changed.  Plaintiffs still assert a claim based on nothing

20   more than an alleged product defect.  So they still cannot recover under § 897.

21       Even if § 897 permitted claims against product manufacturers, the economic

22   loss rule would apply.  *See Greystone Homes*, 168 Cal. App. 4th at 1212 n.9

23   (explaining that § 897 claims are "subject to the economic loss rule").  Plaintiffs

24   have alleged nothing other than economic losses, as this Court has repeatedly

25   recognized in dismissing their tort claims.  *See* TAC Order at 7-11.  Accordingly,

26   their § 897 is subject to dismissal on that basis, too. [3]

27   _____

28   [3] In addition, this Court has already acknowledged that Plaintiffs "likely
     cannot pursue their RORA claims as a Class Action." TAC Order at 30 n.11.  That
     is because, as other courts and authorities have recognized, Cal. Civ. Code § 931

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

## II.   PLAINTIFFS FAIL TO STATE A CLRA CLAIM.

This Court previously dismissed Plaintiffs' CLRA claims for failure to comply with the heightened pleading standards of Rule 9(b) and lack of standing. TAC Order at 29.  Both flaws are still present, and, in addition, Plaintiffs' claim is untimely.

### A.   Plaintiffs' CLRA Claim Is Facially Deficient Under Rule 9(b).

The CLRA enumerates certain "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a).  Plaintiffs assert that Defendants violated § 1770(a)(5), (a)(7), and (a)(9) of the statute, which prohibit specific misrepresentations.  Namely, (a)(5) prohibits "[r]epresenting that goods or services have . . . characteristics. . . uses, benefits, or quantities which they do not have"; (a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade "; and (a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Notably, "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  As a result, to state a claim under the CLRA, Plaintiffs must specifically allege the who, what, when, where, and how of the misconduct charged. *See Vess*, 317 F.3d at 1106.

They did not do so in their Third Amended Complaint, as this Court recognized. *See* TAC Order at 28 (finding that Plaintiffs' "allegations lack sufficient particularity to satisfy Rule 9(b)").  And their Fourth Amended Complaint fares no better.  Indeed, every aspect of the "who, what, when, where, how" Rule 9(b) requires is missing:  Plaintiffs do not allege that Defendant or any

---

bars class actions based on RORA claims. *See Boyko v. Terveno, LP*, No. 15CV2088 JM(JLB), 2016 WL 308592, at *4 (S.D. Cal. Jan. 26, 2016) (holding that "RORA claims may not be brought as class claims"); Harry D. Miller & Marvin D. Starr, Miller and Starr California Real Estate 4th Ed. § 33:2 (2016) (explaining that RORA does not apply to class actions).  So even if this Court were to hold that Plaintiffs can make out individual claims under the Act (they cannot), it should at the very least strike the class allegations.

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

other entity made any particular representations; they do not allege what the alleged misrepresentations were; and they do not allege when, where, or how such misrepresentations were made.  To the contrary, Plaintiffs' theory appears to be that Defendant violated the CLRA not through any misrepresentation at all, but rather by failing to disclose that its products are susceptible to corrosion and the terms of its warranty.  *See* Compl. ¶ 124.  But, again, Plaintiffs do not allege who was responsible for the supposed omission; exactly what should have been disclosed; or when, where, or how such disclosure should have been made, given that Defendant had no contact with Plaintiff prior to this lawsuit.

Moreover, courts have "expressly rejected the notion that a manufacturer can be liable under the CLRA for failure to disclose a defect that manifests itself after expiration of the warranty period." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008), aff'd, 322 F. App'x 489 (9th Cir. 2009).  The only exception to that rule is for "defects that create unreasonable safety risks after the warranty period has ended." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 941 n. 41 (C.D.Cal. 2012); *see also Wilson v. Hewlett–Packard Co.*, No. 09–cv–2253–RMW, 2009 WL 3021240, at *1 (N.D.Cal. Sept. 17, 2009) (dismissing a CLRA claim where the omission did not implicate safety concerns).  As this Court previously recognized, the alleged defects manifested outside the applicable warranty period.  *See* TAC Order at 14-16 n.5 (explaining that Plaintiffs' claims are untimely regardless which warranty applies); SAC Order at 33-34.  Plaintiffs have never alleged that they have suffered any health harms, and conclusory allegations that they may be subject to such risks in the future do not suffice.

In any event, "CLRA claims are governed by the 'reasonable consumer' test, under which a plaintiff must [plausibly] allege that members of the public are likely to be deceived." *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014).  And Plaintiffs fail to allege plausible facts establishing that any reasonable consumer would have been deceived by Defendant's warranty or any other practice.

1  Plaintiffs' CLRA claim thus flunks the Rule 9(b) standard at every turn—and,

2  indeed, would not even satisfy the ordinary Rule 8 standard.  This Court should

3  dismiss the claim on that ground alone.

4  ### B.    Plaintiffs Lack Standing To Assert CLRA Claims.

5  To establish standing "[u]nder the CLRA, plaintiffs must show actual

6  reliance on the misrepresentation and harm."  *Nelson v. Pearson Ford Co.*, 186 Cal.

7  App. 4th 983, 1022 (2010).  But as this Court previously recognized, Plaintiffs

8  "purchased condominiums with HVAC units already installed," and they "do not

9  allege that they relied upon any of [Defendants'] representations when they

10  purchased their condominiums."  TAC Order at 28.  Moreover, they "do not allege

11  how their injury would have been avoided if [D]efendant had disclosed, in some

12  fashion,  the alleged deficiency."  *Id.*  To the contrary, Plaintiffs' "HVAC units are

13  integrated into a building-wide HVAC system at Evo."  Compl. ¶ 74 n.5.  And it

14  beggars belief that Plaintiffs "purchased their condominiums, with an integrated

15  HVAC system, in reliance upon any claim, representation, or omission by the

16  manufacturer of their HVAC systems," let alone that any disclosure by Defendant

17  would have stopped them from purchasing their condominiums.  TAC Order at 29.

18  Plaintiffs thus lack standing under the CLRA.

19  ### C.    The CLRA Claim Is Time-Barred.

20  Plaintiffs' CLRA claim is also time-barred.  CLRA claims carry a three-year

21  statute of limitations that "begins to run on the date the improper consumer practice

22  was committed."  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306,

23  1319 (C.D. Cal. 2013).  Here, any cause of action (though, as just explained, none

24  exists) would have accrued, at the latest, when Plaintiffs purchased the

25  condominiums containing their systems in 2009 and 2010.  Compl. ¶¶ 40, 48.  The

26  limitations period thus expired long before Plaintiffs filed suit.[4]

27

28  _____
[4] Plaintiffs cannot invoke the discovery rule because they have not pleaded specific facts showing their "inability to have made earlier discovery despite reasonable diligence.  *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

10

## III. THE COURT SHOULD DISMISS WITH PREJUDICE.

Plaintiffs have now had *five* chances to state a claim. But they persist in reasserting arguments this Court has already rejected. And their continuing failure to address the deficiencies identified in this Court's prior opinions makes clear that further amendment would be futile. A sixth try would be manifestly unwarranted. The Court should dismiss Plaintiffs' claims with prejudice. *See Ortiz v. America's Servicing Co.,* No. EDCV 12-191 CAS (SPx), 2012 WL 2160953, at *8 (C.D. Cal. June 11, 2012) (Snyder, J.) (finding leave to amend claims would be futile and dismissing with prejudice); *Villalvazo v. Am.'s Servicing Co.*, No. CV 11-4868 CAS (MANx), 2012 WL 3018059, at *6 (C.D. Cal. July 23, 2012) (Snyder, J.) (finding further amendment would be futile and dismissing first amended complaint with prejudice); *Tyson v. Wells Fargo Bank*, No. CV 12-5757-CAS (MANx), 2012 WL 4107877, at *4 (C.D. Cal. Sept. 18, 2012) (Snyder, J.) (same).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Fourth Amended Complaint with prejudice.

Dated: December 12, 2016

JONES DAY

By: */s/ Rick L. McKnight*
Rick L. McKnight

*Attorney for Defendant Daikin Applied Americas Inc.*

---

1308, 1319 (2007); *see also* SAC Order at 40 (finding that Plaintiffs could not invoke the discovery rule for purposes of other claims).

MEMO. IN SUPP. OF MOT. TO DISMISS
FOURTH AM. COMPL.
2:15-CV-09523-CAS-KK.

11